UNITED STATES of America

v.

Christopher F. RECKMEYER, II, et al.

Crim. No. 85–00010–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 9, 1986.

Karen P. Tandy, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

William B. Hanes, Robert E. Sevila, Hanes, Sevila, Saunders & McCahill, P.C., Leesburg, Va., for Jesse A.B. Smith, Jr.

David C. Culbert, Hazel, Beckhorn & Hanes, Leesburg, Va., for First American Bank.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the Verified Claim of Jesse A.B. Smith, Jr., who seeks to recover the value of a herd of cattle, which, pursuant to the Federal Criminal Forfeiture Statute, 21 U.S.C. § 853, was seized by the United States Marshal at the Shelburne Glebe farm in Loudoun County, Virginia, and forfeited to the United States as proceeds of a continuing criminal enterprise engaged in by Christopher Reckmeyer. For the reasons set forth below, Mr. Smith's claim is granted.

### I

After taking evidence on October 22, 1985, the court makes the following findings of fact.

On March 14, 1985, Christopher Reckmeyer plead guilty to engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848.[1] Pursuant to 21 U.S.C. § 853, the Criminal Forfeiture Statute, Reckmeyer forfeited his farm, the Shelburne Glebe, and other personal property located thereon, as proceeds of the continu-ing criminal enterprise. The herd of cattle claimed by Smith was among the items of personal property forfeited to the United States.

In August, 1981, Smith entered into an agreement with Reckmeyer to sell to Reckmeyer a herd of cattle consisting of approximately 55 to 60 cattle, plus calves, their progeny, and two bulls. The subject cattle were a Charolais breed which is an unusual breed in the Loudoun County area. The cattle were delivered to Shelburne Glebe. At the time this transaction was made, Smith was unaware of Reckmeyer's drug-trafficking activities.

The sale price was $92,000. Pursuant to the sales agreement, Reckmeyer was to pay Smith the purchase price, in cash, when the herd of cattle was delivered, or, in the alternative, agree to assume full payment of a $95,000 promissory note secured by the cattle[2] and made payable to the Peoples National Bank of Leesburg.[3] To assume the note, Reckmeyer had to obtain the Bank's credit approval and either sign a separate promissory note or co-sign Smith's note.

At the time Smith delivered the herd of cattle to Reckmeyer, Reckmeyer paid Smith $12,000 in cash. Five appointments were then scheduled for Reckmeyer to go to the Peoples National Bank to sign a promissory note or to co-sign Smith's note. Reckmeyer never appeared at the bank, never applied for credit approval, and never executed the necessary documents.

Smith wrote several letters to Reckmeyer requesting payment. No payments were made. Smith attempted to remove the herd but Reckmeyer only allowed Smith to pick up certain cattle which were suffering from insufficient grain feeding. In September, 1982, Smith instituted a lawsuit against Reckmeyer in the Circuit Court

---

1. The C.C.E. charge was contained in Count 2 of the 48 count indictment. Reckmeyer also plead guilty to Count 26, violations of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2; and Count 31, a violation of 26 U.S.C. § 7206(1).

2. On the date of delivery, all of the cattle and their progeny were subject to the lien of a valid Deed of Trust which was duly perfected by the Bank.

3. The Peoples National Bank of Leesburg now trades as The First American Bank of Virginia.

of Loudoun County for breach of the agreement (See Smith's Exhibit 8).

In January, 1985, the United States Marshal Service levied and took possession of the cattle. Smith appeared on five occasions at Shelburne Glebe and observed the cattle under the control of the Marshal Service. On these occasions, Smith was able to personally identify his cattle and the offspring. This identification was possible because of Smith's personal familiarity with the physical features of his cattle, i.e., their size, color, markings, and age.

On May 8, 1985, a Consent Order of Sale was entered. The Fauquier Livestock Exchange, Inc. prepared detailed records identifying each of the livestock sold and their unique number markings. Smith testified that he did not have a bill of sale or any records reflecting the markings or identity of the cattle he sold to Reckmeyer. Smith further testified that it was not his practice nor the local industry practice to keep precise records of cattle transactions such as this. He states that he could have personally identified each cow for the court prior to the sale and would not have agreed to the sale if he had known that the identity of the livestock would be at issue.

## II

Under 21 U.S.C. § 853, once property is forfeited to the government, a petitioner must establish his superior right to the property by a preponderance of the evidence. 21 U.S.C. § 853(n)(6) specifically provides:

(6) if, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to

any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; ... the court shall amend the order of forfeiture in accordance with its determination.

*Id.*

■ The court finds that Smith has established by a preponderance of the evidence that his right to the cattle in question is superior to Reckmeyer's. The court finds Mr. Smith to be a very credible witness and gives great weight to his testimony concerning the transaction with Reckmeyer and his identification of the cattle at Shelburne Glebe. At the time of the transaction, Smith was dealing in good faith with Reckmeyer and was unaware of his drug trafficking activities.

■ Concerning the original sales transaction, the evidence shows that title to the cattle was never transferred because Reckmeyer never made any arrangements with the Peoples National Bank for payment. These were conditions precedent [4] to title of the cattle passing from Smith to Reckmeyer. The failure of Reckmeyer to perform these conditions precedent prevented title to the cattle from vesting in him. *Tiedman v. American Pigment Corp.*, 253 F.2d 803 (4th Cir.1958); *Wendlinger v. Smith*, 75 Va. 309 (1881).

■ As to the issue of the adequacy of Smith's identification of the cattle, with no evidence introduced indicating that the cattle belonged to anyone else, the court is satisfied that the cattle sold under the Consent Order of May 8, 1985, was the same cattle, with accretions, as was the subject of the original transaction between Smith and Reckmeyer. The lack of any records specifically identifying each cow is not controlling in light of the evidence showing the informal course of dealing usually associated with such cattle sales and the strong testimony of Mr. Smith. The court does

---

**4.** A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been

agreed upon, before the contract shall take effect. See Vol. 4B, *Michie's Jurisprudence* Virginia and West Virginia 94 (1974 Repl.Vol).

not feel that it should require a more formal transaction with Reckmeyer than is normally required in the cattle business.

In summary, Smith has met his burden under 21 U.S.C. § 853(n)(6) of establishing by a preponderance of the evidence that title to the cattle was vested in himself and not in the Defendant Reckmeyer. The court will therefore direct that the proceeds from the sale of the full and mixed Charolais cattle be paid to Jesse A.B. Smith.

An appropriate Order shall issue.